OPINION OF THE COURT
Anthony J. Fiorella, Jr., J.
Petitioner instituted this holdover proceeding alleging that respondent does not utilize the subject premises as her primary residence. Respondent appears by counsel and asserts that the subject premises is her primary residence. Respondent moves to dismiss the petition on the ground that the notice of nonrenewal is defective pursuant to the Rent Stabilization *146 Code, for defective service of the notice of petition and petition and for petitioner’s failure to offer a timely renewal lease.
The court finds that the service of the predicate notice is not defective. Respondent contends that petitioner failed to serve the notice of nonrenewal and the notice of petition and petition at the primary residence of respondent. Petitioner provides copies of the certified mailing receipts and a sworn affidavit verifying that the pleadings were served on the respondent. A mere claim of improper service without more is insufficient to rebut the affidavit of service. A sworn affidavit alleging the particulars concerning why service is improper is required. (Dezego v Bruhn, 67 NY2d 875 [1986]; Hinds v 2461 Realty Corp., 169 AD2d 629 [1st Dept 1991]; Frankel v Schilling, 149 AD2d 657 [2d Dept 1989].) In the instant case the affidavit alleging improper service by respondent does not state with particularity why service was improper. Respondent has failed to make a showing sufficient to require a traverse hearing. Notwithstanding the foregoing, respondent failed to raise this issue at trial and it is waived.
The respondent claims the notice of nonrenewal fails to set forth facts necessary to establish the existence of a ground for nonrenewal regarding the tenant’s alleged failure to use the subject apartment as her primary residence. When the sufficiency of a predicate notice is being assessed, the appropriate test is one of reasonableness in view of the circumstances. (Hughes v Lenox Hill Hosp., 226 AD2d 4 [1st Dept 1996]; Miller v Vosooghi, NYLJ, Apr. 18, 2001, at 18, col 1 [App Term, 1st Dept].) In the case at bar, the nonrenewal notice provides the fact specific allegations necessary to maintain this proceeding. The notice clearly sets forth the grounds of the underlying non-primary residence case as per Rent Stabilization Code (9 NYCRR) § 2520.6 (u) which states: “[although no single factor shall be solely determinative, evidence which may be considered in determining whether a housing accommodation subject to this code is occupied as a primary residence shall include, without limitation, such factors as listed below: * * * [alternative] address, * * * tax return, [DMV] registration, driver’s license * * * , voting address [and] occupancy * * * for an aggregate of less than 183 days * * * [a] year.” Respondent’s occupancy is at issue: She admitted at trial that she only came back to New York for this proceeding. Further, respondent stated no basis why the notice served by petitioner should be regarded as unreasonable or, alternatively, should be subject to strict construction as a matter of equity. (See e.g., MSG *147 Pomp Corp. v Doe, 185 AD2d 798 [1992] [landlord misrepresentation of ownership and rent regulated status of apartment].) Petitioner’s nonrenewal notice reasonably sets forth the reasons petitioner claims the subject premises are not being used as her primary residence. The court finds the notice of nonrenewal is sufficient to serve as a predicate notice for this holdover proceeding. (London Terrace Gardens v Sacks, 149 Misc 2d 292, 294 [1990].)
In a prior nonprimary residence case, Index No. 76659/2000, respondent admitted that she did not live in the apartment from November 1997 through October 2000. She claimed she was taking care of her sick mother in Puerto Rico. The Trial Part found in favor of respondent, based primarily on the fact it was respondent’s “intention” to return to the subject premises. Petitioner promptly filed an appeal and the Appellate Term’s decision of February 3, 2003 affirmed the lower court’s holding (2003 NY Slip Op 50553[U]).
Respondent now contends that petitioner never offered respondent a renewal lease; therefore petitioner’s claim of non-primary residence is invalid since no lease was in effect at the time of nonrenewal. After the first trial petitioner learned that respondent did not bring her mother to New York to reside with her, nor did respondent occupy the premises herself. Respondent’s lease expired September 30, 2000. Petitioner issued a nonrenewal notice in June 2002, effective September 30, 2002. This in effect gave the respondent the benefit of a two-year lease renewal with no rent increase as she remained a statutory tenant until final disposition of the proceeding. The respondent represented in the prior proceeding that she intended to return to the apartment, which she did not do. If the petitioner had offered her a renewal lease at the conclusion of the prior trial it would for all practical purposes be an abandonment of its appeal of the final order.
This proceeding is separate and distinct from the prior one. This court adjudicates this nonprimary residence case on the facts and testimony adduced at this trial. Petitioner claims respondent does not primarily reside in the subject premises, and respondent admitted in the last case that she did not reside in the subject apartment from November 1997 through October 2000 due to the fact she was taking care of her sick mother in Puerto Rico. In the present case petitioner’s witness credibly testified that respondent has not lived in the apartment for the past two years. Respondent admitted at trial that she only *148 returned from Puerto Rico for this proceeding, which supports petitioner’s position: that she does not primarily reside in the apartment. The case was scheduled for trial on November 14, 2002. On that date the court granted an adjournment to November 21, 2002 for respondent to return to New York.
Respondent must establish an “ongoing, substantial, physical nexus with the controlled premises for actual living purposes — which can be demonstrated by objective empirical evidence.” (Emay Props. Corp. v Norton, 136 Misc 2d 127, 129 [1987] [App Term, 1st Dept 1985]; Cox v J.D. Realty Assoc., 217 AD2d 179 [1st Dept 1995].) Evidence such as telephone bills, utility bills, tax returns, motor vehicle registration and voter registration are all good indicators as to where a tenant maintains their primary residence (Cox, supra at 184). While the onus of establishing nonprimary residence is initially placed on the landlord, once established, the burden shifts to the tenant to establish his primary residence at the subject premises. (Katz v Lubotta, NYLJ, May 20, 1985, at 13, col 6 [App Term, 1st Dept].) In the instant case respondent does not file tax returns in New York State, even though she has income since she pays the rent for the subject premises. The phone bills and utility bills show minimum usage, clearly not the amount used by a person primarily residing in the apartment. The respondent admitted under cross-examination that her bills were all paid from Puerto Rico. Accordingly, the most critical factor involved is the amount of time spent at the subject apartment. The respondent failed to establish her presence at the subject apartment for the requisite 183 aggregate days necessary to maintain a primary residence. The mere fact that a tenant may create a paper trail connecting him to the subject premises is no longer dispositive particularly where there is testimony supporting a finding as to the tenant’s absence. (300 E. 34th St. Co. v Habeeb, 248 AD2d 50 [1st Dept 1997]; Second 82nd Corp. v Hahn, NYLJ, July 2, 1998, at 32, col 1 [App Term, 1st Dept].) Respondent by her own admission says she is still caring for her mother in Puerto Rico and only came back to New York for this proceeding. Petitioner’s witness, Mr. Saddler, the agent responsible for the building, credibly claims that he has not seen respondent for the last two years. Respondent cannot go on indefinitely caring for her mother, leaving her apartment for years without living in her stabilized apartment; it is simply against public policy.
It is well settled that the legislative intent of rent control and rent stabilization is to alleviate the housing shortage, not *149 to permit tenants to use apartments for convenience or storage. “In specifically excluding housing accommodations not used as the tenant’s primary residence from those to which a local declaration of emergency may apply, the Legislature has made clear its intention that regulatory protection should not be available where the tenant’s claim to the subject premises is based on less than the need for a place to call home. This intent is entirely consonant with the public policy sought to be advanced, which is to promote the availability of affordable housing units.” (Cox, supra at 185; Briar Hill Apts. v Teperman, 165 AD2d 519, 523 [1991].) “Public policy is not advanced by permitting housing units to be held, partly or wholly unutilized, by tenants whose interest is pecuniary gain rather than affordable housing.” (Park S. Assoc. v Mason, 123 Misc 2d 750, 753 [1984], affd 126 Misc 2d 945 [1984].) Although it is unfortunate that respondent’s mother is ill, it is not fair to the landlord or the public to withhold this apartment from someone truly in need. There are legitimate reasons for being absent from your apartment such as employment, travel, and health reasons, etc., however, respondent has abused the “ill relative” excuse. She represented to the landlord during the first trial that she would be returning with her mother to the subject premises, which is not the case at all. According to respondent’s own testimony she is still residing in Puerto Rico in her mother’s home, not utilizing this apartment. In Hughes (supra at 11), the Court found it was “highly significant” that the respondent was not living in the subject premises up to the time of trial and to the present. Similarly in the case at bar, respondent continued to reside with her mother in Puerto Rico from the conclusion of the last proceeding up to the time of this trial. Thus, she makes no requisite use of the premises. Indeed, respondent’s assertion of a claim of possession of this apartment is predicated on nothing more than a vague articulation of the possibility that she intends to occupy the subject premises on a full-time basis when her mother receives medical clearance to return to New York. For at least the past two years this has not occurred and there is no clear indication from any source that it is forthcoming.
Based upon the foregoing analysis, the court denies respondent’s motion to dismiss and grants a final judgment of possession in favor of petitioner; issuance of the warrant forthwith, execution stayed 30 days.